FILED

CLERK, U.S. DISTRICT COURT

3/6/26

CENTRAL DISTRICT OF CALIFORNIA
BY_____CS_____DEPUTY
DOCUMENT SUBMITTED THROUGH THE
ELECTRONIC DOCUMENT SUBMISSION SYSTEM

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

VIVEK SHAH,
      Plaintiff,

v.

                                  Case No.: 2:25-cv-12381-ODW-PVC

SECUREWORKS CORP.,
      Defendant.

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

### I. INTRODUCTION

Defendant SecureWorks Corp. ("Defendant") moves to dismiss my First Amended Complaint ("FAC") by capitalizing on minor typographical errors and attempting to litigate factual disputes that are inappropriate at the pleading stage. I bring this action under the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 631(a), alleging that Defendant intentionally embedded third-party software on its website that intercepted my substantive search queries without my consent.

Because I am proceeding *pro se*, my pleadings must be construed liberally. *Ross v. Williams*, 950 F.3d 1160, 1173 (9th Cir. 2020) ("The obligation to construe pro se filings liberally means courts must frequently look to the contents of a pro se filing rather than its form."). The Court's duty at this stage is clear: it must "'accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party.'" *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). As set forth below, the FAC properly establishes subject matter jurisdiction, demonstrates Article III standing, and states a plausible claim for relief under CIPA. Defendant's Motion to Dismiss should be denied in its

1

entirety.

## II. ARGUMENT

**A. The FAC Establishes Subject Matter Jurisdiction.**

Defendant first argues that the FAC fails to establish diversity jurisdiction because it cites the wrong subsection of the diversity statute, fails to use "magic words" regarding corporate citizenship, and contains a mathematical typo regarding the amount in controversy. None of these technicalities warrant dismissal.

First, regarding the amount in controversy: the FAC explicitly asserts 35 distinct Counts. (FAC at 4). Under CIPA, each count carries $5,000 in statutory damages. Thirty-five counts multiplied by $5,000 equals $175,000—well over the $75,000 threshold. Defendant hinges its argument on a sentence in paragraph 5 stating there are "at least thirteen violations." While mathematically incomplete, "at least thirteen" is not factually untrue, and it does not negate the 35 actual counts pled in the complaint. To the extent this typo causes confusion, it is easily curable by amendment, but it does not deprive this Court of jurisdiction.

Second, regarding diversity of citizenship: Defendant knows that diversity jurisdiction has been pled, albeit citing the class action subsection, 28 U.S.C. § 1332(d)(2), rather than § 1332(a). Furthermore, the FAC alleges that "Defendant SecureWorks Corp. is a Delaware business entity[.]" (FAC ¶ 9). Being a citizen of Delaware is clear from this allegation. A *pro se* plaintiff is not required to use specific "magic words" (like "principal place of business") when the fundamental facts establishing diversity are present. *See Williams v. Thomas*, 692 F.2d 1032, 1040 (5th Cir. 1982) ("this Court should not deny attorneys' fees against the governmental entity just because a pro se plaintiff failed to use the 'magic' words 'in his official capacity.'"); *In re Smith*, 489 B.R. 875, 896 (Bankr. M.D. Ga. 2013) ("The Federal Rules do not require magic

words or specific appellations, especially from a pro se plaintiff."). Complete diversity exists between me (a citizen of California) and Defendant (a citizen of Delaware). Should the Court require strict adherence to the formal statutory phrasing, I respectfully request leave to amend to correct these typographical defects.

**B. I Have Article III Standing.**

Defendant argues I lack standing because the collection of data does not constitute a concrete injury. Defendant relies on *Popa v. Microsoft Corp.*, 153 F.4th 784, 792 (9th Cir. 2025), noting the court's statement that "a statutory violation, in and of itself, is insufficient to demonstrate a concrete injury" when it comes to routine browsing data. (MTD at 9). This reliance is misplaced.

Unlike routine routing data, I allege the interception of my specific *search queries*. The Supreme Court has made clear that "[v]arious intangible harms can be concrete. Chief among them are injuries with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts." *Trans Union LLC v. Ramirez*, 594 U.S. 413, 425 (2021). The Ninth Circuit recognizes this exact relationship for privacy claims: "[V]iolations of the right to privacy have long been actionable at common law," and "[a] right to privacy 'encompass[es] the individual's control of information concerning his or her person.'" *In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d 589, 598 (9th Cir. 2020) (quoting *Patel v. Facebook*, 932 F.3d 1264, 1272 (9th Cir. 2019) and *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 983 (9th Cir. 2017)). Furthermore, eavesdropping like "tapping ... telephone wires" is a traditionally recognized harm. *See Restatement (Second) of Torts § 652B cmt. b.* (1977).

As applied to modern technology, "The Ninth Circuit has found that each of the statutory claims brought here codify substantive rights to privacy." *Brown v. Google LLC*, 685 F. Supp. 3d

909, 924 (N.D. Cal. 2023). That same court further explained that the storage of users' browsing data "was sufficient to establish that the plaintiffs suffered concrete harm." *Id.* at 925. As another circuit court has similarly observed, "History and tradition reinforce that a concrete injury for Article III standing purposes occurs when Google, or any other third party, tracks a person's internet browser activity without authorization." *In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 934 F.3d 316, 325 (3d Cir. 2019).

Furthermore, "Ninth Circuit law indicates [ ] users [have a reasonable expectation of privacy] over URLs that disclose either unique search terms or the particular document within a website that a person views." *Brown*, 685 F. Supp. 3d at 941. *See also Heerde v. Learfield Commc'ns, LLC*, 741 F. Supp. 3d 849, 859 (C.D. Cal. 2024) ("users have a reasonable expectation of privacy in 'unique search terms.'").

Here, third-party strangers intercepted the specific words I typed into the search bar. The violation of this substantive privacy right, codified by CIPA, constitutes a concrete injury-in-fact sufficient to confer Article III standing.

**C. The FAC Plausibly States a Claim Under CIPA § 631(a).**

Defendant argues that the FAC fails to state a claim under Rule 12(b)(6) because I supposedly failed to allege the "contents" of a communication and failed to allege a lack of consent. Both arguments fail.

**1. Search Terms Constitute the "Contents" of a Communication.**

Defendant incorrectly attempts to recharacterize my search queries as mere "record information." The FAC explicitly alleges that Defendant intercepted the actual text queries— "words typed by [me] into Defendant's on-site search bar." (FAC ¶ 2).

Federal courts consistently hold that search terms are contents. "Search terms constitute

'contents' of a communication." *Heerde,* 741 F. Supp. 3d at 859. *See also In re Meta Pixel Healthcare Litig.,* 647 F.Supp.3d 778, 795–96 (N.D. Cal. 2022) ("finding that search terms entered into a website constitute the 'contents' of a communication"); *In re Zynga Priv. Litig.,* 750 F.3d 1098, 1108–09 (9th Cir. 2014) ("explaining URL data may contain 'contents' of a communication if a user's search terms are included therein"); *In re Carrier IQ, Inc.,* 78 F. Supp. 3d 1051, 1083 (N.D. Cal. 2015) ("finding search terms implicate 'content'"); *Gabrielli v. Haleon US Inc.,* No. 25-CV-02555-WIIO, 2025 WL 2494368, at *11 (N.D. Cal. Aug. 29, 2025) ("search terms and descriptive URLs, like those alleged in the complaint, constitute 'contents.'"). Because I alleged the interception of my search terms, I have adequately pled the interception of "contents."

**2. I Did Not Consent to the Interception.**

Defendant raises meritless theories regarding consent, all of which improperly rely on factual assumptions contrary to the allegations in the FAC.

First, Defendant speculates that because I used developer tools to "observe" one of the transmissions, I had "implied consent" to be tracked. (MTD at 12-13). As the FAC outlines in detail under the heading "Lack of Notice or Consent," I was "unaware" of the tracking until I discovered it. (FAC ¶ 13). Discovering a violation does not retroactively constitute implied consent to it, nor does it excuse the prior unauthorized interceptions. I stopped accessing the website after discovering the violations. Defendant's speculation to the contrary does not defeat well-pled factual allegations and should be reserved for summary judgment or trial, not a motion to dismiss.

Second, Defendant argues that I consented to the tracking because I selected "Use necessary cookies only" on the website's cookie banner, and the FAC supposedly fails to allege

5

that the analytics functionality falls outside those necessary operational tools. (MTD at 13). This argument blatantly contradicts the FAC, which explicitly states: "Notwithstanding [my] express rejection of unnecessary cookies and tracking, Defendant's website continued to transmit the contents of [my] search communications to third-party domains in real time." (FAC ¶ 18).

Whether the third-party tracking scripts Defendant embedded qualify as "necessary cookies" is a factual question that cannot be resolved on a motion to dismiss. "Courts are generally hesitant to decide claims of this nature at the pleading stage." *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d at 799. Courts in this Circuit routinely reject defendants' attempts to litigate the mechanics of cookie consent banners at this stage. *See Camplisson v. Adidas America, Inc.*, 2025 WL 3228949 (S.D. Cal. Nov. 18, 2025) (holding that "owner's consent to cookies and trackers did not defeat consumers' CIPA claims" and the "website did not make terms and conditions sufficiently conspicuous to bind consumers"). Likewise, in *Gabrielli v. Motorola Mobility LLC*, No. 24-cv-09533-JST, 2025 WL 1939957 (N.D. Cal. July 14, 2025), the court rejected the defendant's argument that its tracking—despite a user's opt-out selection—was a "bona fide error," recognizing that it "'is an inherently factual contention that cannot properly be resolved on a motion to dismiss.'" *Id.* (quoting *Brennan v. Concord EFS, Inc.*, 369 F. Supp. 2d 1127, 1131 (N.D. Cal. 2005)). The court further noted that "Because [the defendant's] argument is based on a dispute of facts, the Court declines to dismiss [plaintiff's] claims on this basis, as it must 'accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party.'" *Id.* (quoting *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005)).

The same logic applies here. I clearly allege I opted out of tracking by selecting "necessary cookies only," and that Defendant disregarded this choice by transmitting my search

queries. Defendant's attempt to redefine its third-party software as "necessary"—or to blame me for supposedly not opting out appropriately—is a factual defense that is entirely improper under Rule 12(b)(6).

### III. CONCLUSION

For the foregoing reasons, I respectfully request that the Court deny Defendant's Motion to Dismiss. In the alternative, if the Court finds any technical pleading deficiencies regarding jurisdiction, I request leave to amend the complaint.

Dated: March 6, 2026

Respectfully submitted,

/s/ Vivek Shah
Vivek Shah
1301 N Broadway Ste 32167
Los Angeles, CA 90012
newvivekshah@gmail.com
(224) 246-2874